UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARTISHA MCDONALD-NNAMDI UDEAGU )
and IYANI MCDONALD,. )
    Plaintiffs, )
     )
v. ) Case No.
     )
BRENNA BRADY ET. AL., )
     )
    Defendants. )

## COMPLAINT

The Plaintiffs, ARTISHA MCDONALD-NNAMDI UDEAGU ("ARTISHA") and IYANI MCDONALD (through ARTISHA as next friend), by and through their attorneys, BRODY BRANDNER, LTD., allege and state as follows:

### INTRODUCTORY STATEMENT

1. This four-count civil rights complaint brought pursuant to 42 U.S.C. § 1983 arises from the actions of the Illinois Department of Children and Family Services ("DCFS") investigators and supervisors who first attempted to coerce ARTISHA into verbally approving a safety plan and when ARTISHA refused to agree, implemented the purported safety plan anyway, falsely and fraudulently asserting that ARTISHA verbally agreed to the purported plan. The DCFS investigators and supervisors then withheld the minor child and improperly threatened to retain custody.

2. Plaintiffs seek to redress the deprivation of their fundamental liberty interest in familial associations, through the Defendants' actions taken under color of state law. They seek to vindicate their rights under the Fourth and Fourteenth Amendments. Pursuant to 42 U.S.C. §

1983, Plaintiffs seek compensatory and punitive damages for the injuries to each member of the family, and pursuant to 42 U.S.C. § 1988, they seek attorney's fees.

3. In Count I, Plaintiffs seek damages against the named DCFS Defendants for fraud. In Count II, Plaintiffs seek damages against the named DCFS Defendants for seizing IYANI's person by maintaining her in protective custody from April 23, 2024 to April 26, 2024, in violation of the Fourth Amendment. In Count III, Plaintiffs seek damages against the DCFS Defendants for removing IYANI from her mother's care and subsequently restricting the right of the family members to remain together, in violation of their substantive due process rights secured by the First, Fourth, and Fourteenth Amendments. In Count IV, Plaintiffs seek damages against DCFS Defendants for violating their rights to procedural due process.

PARTIES

4. ARTISHA is 33 years of age, presently resides in the County of Cook, State of Illinois, and at all times relevant hereto was a resident and citizen of the County of Cook, State of Illinois, and the United States of America.

5. IYANI is 11 years of age, presently resides in the County of Cook, State of Illinois, and at all times relevant hereto was a resident and citizen of the County of Cook, State of Illinois, and the United States of America. Pursuant to Fed. R. Civ. P. 17(c), she proceeds here by her mother, ARTISHA.

6. The ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES ("DEPARTMENT") is a state agency organized pursuant to the Illinois Children and Family Services Act, 20 ILCS 505/1, *et. seq.*

7. BRENNA BRADY ("Defendant BRADY") is employed by the DEPARTMENT as a Child Protection Investigator, employed in the Chicago DCFS office, and was assigned

investigative responsibilities as to an investigation involving IYANI. She is sued in her individual capacity, and at all times relevant hereto was a resident and citizen of the State of Illinois and the United States of America.

8. KARLA ROBERTSON ("Defendant ROBERTSON") was, at the time of the incidents giving rise to this Complaint, a DCFS supervisor who was the supervisor of Defendant BRADY. As such, Defendant ROBERTSON was responsible for reviewing and approving the actions of Defendant BRADY regarding IYANI; she did so review and approve those actions. She is sued in her individual capacity, and at all times relevant hereto was a resident and citizen of the State of Illinois and the United States of America.

9. REGINALD WHITE ("Defendant WHITE") is employed by the DEPARTMENT as a Child Protection Investigator, employed in the Chicago DCFS office, and was the overnight DCFS caseworker who enacted the safety plan regarding IYANI. He is sued in his individual capacity, and at all times relevant hereto was a resident and citizen of the State of Illinois and the United States of America.

10. ALICIA PICKETT ("Defendant PICKETT") was, at the time of the incidents giving rise to this Complaint, a DCFS supervisor who was the supervisor of Defendant WHITE. As such, Defendant PICKETT was responsible for reviewing and approving the actions of Defendant WHITE regarding IYANI; she did so review and approve those actions, including the safety plan. She is sued in her individual capacity, and at all times relevant hereto was a resident and citizen of the State of Illinois and the United States of America.

11. All Defendants are hereafter collectively referred to as "DCFS Defendants."

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 and pursuant to 28 U.S.C. §§ 1331 and 1343(3).

13. Venue is proper in this district under 28 U.S.C. § 1391 because (a) The Northern District of Illinois is the judicial district in which substantially all of the events or omissions giving rise to Plaintiffs' claims occurred; (b) The Defendants are found or are employed, or at the time of the incidents giving rise to this suit were so employed, in the Northern District of Illinois.

## FACTS COMMON TO ALL COUNTS

14. IYANI attended St. Damian Elementary School, in Oak Forest, Illinois during the 2023-2024 school year.

15. On Thursday, April 18, 2024, IYANI was playing outside with other children and was accidentally hit in the face with a ball, resulting in a black eye.

16. On Friday, April 19, 2024, the school nurse questioned IYANI how she received the black eye. IYANI told the nurse that ARTISHA had hit her.

17. Consequently, the nurse contacted the DEPARTMENT and Defendant BRADY was assigned as the case worker.

18. At about 2:00 p.m. Defendant BRADY prohibited ARTISHA from picking IYANI up from school. The child's maternal grandfather, Robert McDonald, was allowed to take the child. At about 2:30 p.m., Defendant BRADY told ARTISHA that IYANI could not come home. Defendant BRADY's conduct constituted the taking of protective custody of IYANI and placement with her grandfather.

19. From the time protective custody was taken, 48 hours (exclusive of weekends and holidays) expired on Tuesday, April 23, 2024, at approximately 2:00 p.m. However, IYANI was not

brought before a judicial officer on or before April 23, 2024, no temporary custody hearing or other judicial proceeding commenced on or before April 23, 2024, and IYANI was not released or returned to her mother's car on or before April 23, 2024.

20. On Defendant BRADY's bequest, the grandfather drove IYANI to Advocate Christ Medical Center, in Oak Lawn, Illinois for a medical check-up.

21. Instead, Defendant WHITE, the DEPARTMENT's overnight case worker called ARTISHA at approximately 11:00 p.m. on Friday, April 19, 2024.

22. Defendant WHITE attempted to convince ARTISHA into agreeing to a safety plan, stating that IYANI could not be released from the hospital without a valid plan in place.

23. ARTISHA repeatedly refused to agree, stating that she could not agree to a document she was unable to see.

24. Defendant WHITE repeatedly claimed that ARTISHA could verbally agree to the safety plan, to which ARTISHA refused.

25. ARTISHA did not, at any time, orally agree to the entry of the purported safety plan, over the telephone or authorized DEFENDANT WHITE to sign any purported safety plan on her behalf.

26. Neither Defendant WHITE nor any member of the DEPARTMENT ever provided ARTISHA with a copy of the purported safety plan.

27. On April 19, 2024, Defendant BRADY told ARTISHA that another caseworker would contact her on Monday, April 22, 2024, with information regarding the time and place of shelter care.

28. No Department employee contacted ARTISHA on Monday, April 22, 2024.

29. On Monday, April 22, 2024, ARTISHA spoke with her father, who then told her that she had allegedly agreed to the purported safety plan.

30. When ARTISHA's father sent her a copy of the purported safety plan, ARTISHA noticed that in the space on the plan where the parent or guardian of the child was to provide their signature, there was handwriting that said, "Mother gave her verbal consent."

31. On information and belief, Defendant WHITE wrote "Mother gave her verbal consent."

32. ARTISHA never, at any time, gave verbal consent to the purported safety plan.

33. The purported safety plan alleges in pre-typed print, that the caseworker "discussed the attached safety plan and the consequences of non-compliance with the caretaker and all those who are responsible for carrying out the plan." Above the parent signature line, the purported safety plan also alleges as part of the pre-printed form:

"We have discussed the safety plan with the worker. We understand its contents and that it is voluntary. We agree to abide by the terms and conditions of the plan. If something happens that prevents us from carrying out the plan, we will immediately notify the worker. If the worker is unavailable, we will notify the supervisor. We understand that failure to agree to the plan or to carry out the plan may result in a reassessment of our home and possible protective custody and/or referral to the State's Attorney's Office for a court order to remove my children from my home. We will then have the opportunity to plead our case in court. I have been given a copy of the CFS 1441-D thru F, Safety Plan Rights and Responsibilities."

34. Neither Defendant WHITE nor any member of the DEPARTMENT ever discussed the purported plan's contents with ARTISHA or provided ARTISHA with a copy of the CFS 1441-D through F Safety Plan Rights and Responsibilities.

35. Moreover, Defendant WHITE could not have provided ARTISHA with a copy of the Safety Plan Rights and Responsibilities because their conversation took place by telephone.

36. The purported safety plan clearly identified a space for the parent to sign their signature, agreeing to the plan.

37. ARTISHA never signed the purported safety plan.

38. The purported safety plan also designated a space for the caseworker's supervisor's approval.

39. The purported plan stated that Defendant PICKETT was Defendant WHITE's supervisor, but the space for supervisor approval is blank.

40. Defendant PICKETT did not sign her approval of the purported safety plan and the box stating that the supervisor verbally approved the plan was unchecked.

41. The purported safety plan, as drafted, expired on Friday, April 26, 2024.

42. No temporary custody hearing occurred for IYANI, on information and belief, as a result of ARTISHA's verbal approval of the purported safety plan.

43. On Wednesday, April 24, 2024, Defendant BRADY contacted ARTISHA and told her that if ARTISHA did not agree to participate in intact services by 1:00 p.m. that day, then the DEPARTMENT would file a petition with the court to retain custody of IYANI.

44. On information and belief, the 1:00 p.m. deadline was given because it was approximately 48 hours before the purported safety plan expired, the amount of time necessary for the DEPARTMENT to file and schedule a temporary custody hearing.

45. ARTISHA informed Defendant BRADY that she had never actually agreed to the safety plan.

46. Defendant BRADY did not respond to or address ARTISHA's claims.

47. At approximately 1:00 p.m. on April 24, 2024, ARTISHA agreed to participate in intact services.

48. ARTISHA agreed to participate in intact services as a result of Defendant BRADY's threat to file a petition and retain custody of IYANI.

49. The DEPARTMENT finally permitted ARTISHA to regain custody of IYANI on Friday, April 26, 2024 (three days after the 48 hour deadline had passed).

50. Despite Defendant BRADY's warnings that if ARTISHA did not agree to intact services, the DEPARTMENT would petition to retain custody of IYANI and ARTISHA's eventual agreement to intact, ARTISHA was never provided a copy of the intact service plan and never signed any intact documents.

51. On or about May 18, 2025, Defendant BRADY and another DEPARTMENT caseworker visited ARTISHA's residence. The DCFS caseworker emphasized that ARTISHA's agreement to intact services was voluntary and that she did not have to agree. Only then was ARTISHA provided with intact service documents to sign. ARTISHA signed the intact service agreement.

52. The purported safety plan was invalid.

53. At no relevant time did ARTISHA agree to placement of IYANI outside of her home.

54. Defendant WHITE falsely and fraudulently asserted that ARTISHA agreed to the safety plan. By retaining custody of IYANI beyond Tuesday, April 23, 2024, without a valid safety plan and without commencing a temporary custody hearing, the DCFS Defendants deprived ARTISHA of her protected liberty interests without due process, in violation of the United States Constitution, the Illinois Constitution, and Illinois law.

55. By enforcing a safety plan based upon ARTISHA's alleged verbal agreement, without ARTISHA's written signature, and retaining custody of IYANI based upon ARTISHA's alleged verbal consent, without commencing a temporary custody hearing, the DCFS Defendants deprived ARTISHA of her protected liberty interests without due process, in violation of the United States Constitution, the Illinois Constitution, and Illinois law.

56. By falsely and fraudulently asserting that ARTISHA agreed to the safety plan and retaining custody of IYANI without a valid safety plan and without commencing a temporary custody

hearing, the DCFS Defendants deprived IYANI of her protected liberty interests without due process, in violation of the United States Constitution, the Illinois Constitution, and Illinois law.

57. By enforcing a safety plan based upon ARTISHA's alleged verbal agreement, without ARTISHA's written signature, and retaining custody of IYANI based upon ARTISHA's alleged verbal consent, without commencing a temporary custody hearing, the DCFS Defendants deprived IYANI of her protected liberty interests without due process, in violation of the United States Constitution, the Illinois Constitution, and Illinois law.

58. ARTISHA and IYANI have a clearly established constitutional right to familial association, the care, custody, control and management of minors by the parent, and to live without unwarranted restrictions pursuant to *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463 (2011).

59. ARTISHA and IYANI have a clearly established constitutional right to have a minor child return home to her parent after 48 hours if no shelter-care hearing has been conducted pursuant to *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463 (2011).

60. All DCFS Defendants' conduct was in willful and reckless disregard for the plaintiffs' constitutional rights.

61. All counts are brought against DEFENDANTS WHITE, BRADY, PICKETT, and ROBERTSON.

62. DEFENDANT PICKETT and DEFENDANT ROBERTSON reviewed and approved DEFENDANT WHITE's and DEFENDANT BRADY's actions, respectively.

63. At all times relevant hereto, all individual Defendants were acting under color of state law in their capacity as employees and agents of the DEPARTMENT, and their acts or omissions were committed within the scope of their official duties or employment.

## ILLINOIS LAW

64. Pursuant to the Abuse and Neglected Child Reporting Act, a designated employee of the DEPARTMENT "may take or retain temporary protective custody of the child without the consent of the person responsible for the child's welfare, if (1) the officer of a local law enforcement agency, designated employee of the Department, or a physician treating a child has reason to believe that the child cannot be cared for at home or in the custody of the person responsible for the child's welfare without endangering the child's health or safety; and (2) there is not time to apply for a court order under the Juvenile Court Act of 1987 for temporary custody of the child." 325 ILCS 5/5.

65. Once taken into temporary protective custody, further proceedings are controlled by the Juvenile Court Act which dictates that a child must be brought before a judicial officer within 48 hours, exclusive of holidays and weekends, or else released back to the custody of his or her parents or guardians. 705 ILCS 405/2-9. If the child is not brought before a judicial officer within the 48-hour period, the child must be released from temporary protective custody. *Id.*

66. No provision of Illinois law authorizes the DEPARTMENT to continue temporary protective custody beyond 48 hours. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463 (2011).

67. Illinois law does not authorize DCFS investigative employees to issue orders or directives to parents. To the extent DCFS employees determine that a family should live under restrictions (such as having "no unsupervised contact" with their children), the only options afforded are

to (1) ask the parents to voluntarily agree to a safety plan, or (2) to take protective custody and to request a petition be filed with the juvenile abuse and neglect court. Unlike DCFS the juvenile court does have the authority to issue such directives pursuant to the Juvenile Court Act, as to children for whom there is probable cause to believe they are abused or neglected, 705 ILCS 5/2-10 (requiring dismissal of petitions as to which there is not probable cause), and to enter orders of protection requiring families to abide by restrictions on their family life as a condition of the children being returned home. *Id*. at § 5/2-25.

68. The Children and Family Services Act provides that the DEPARTMENT "may assume temporary custody of any child if, it has received a *written consent* to such temporary custody *signed* by the parents of the child . . ." 20 ILCS 505/5(m)(1). Emphasis added.

69. Pursuant to 89 Ill. Adm. Code 304.2, a voluntary placement agreement is a "time-limited *written request and consent* from a parent, guardian or legal custodian of a child for placement of the child out of the home." (Emphasis added.) The Children and Family Services Act also serves as an enabling statute for state regulations, stating that the "Department shall establish rules and regulations concerning its operation of programs designed to meet the goals of child safety and protection, family preservation, family reunification, and adoption, including, but not limited to . . . protective services [and] . . . placement under Section 5-7 of the Juvenile Court Act or Section 2-27, 3-28, 4-25, or 5-740 of the Juvenile Court Act of 1987 in accordance with the federal Adoption Assistance and Child Welfare Act of 1980 . . ." 20 ILCS 505/5(g).

70. 89 Ill. Adm. Code 304.2 defined a voluntary placement agreement as a "time-limited *written* request and consent from a parent, guardian or legal custodian of a child for placement of the child out of the home." (Emphasis added.)

71. Furthermore, seven other sections of Title 89 of the Illinois Administrative Code state that placement agreements must be *written* and voluntary:

    a. 300.20
    b. 301.20
    c. 301.40
    d. 302.20
    e. 304.50
    f. 306.20
    g. 309.20

72. In contrast, no statute, state regulations, or caselaw permit verbal approval of a safety plan or placement agreement.

73. Pursuant to the Abused and Neglected Child Reporting Act, if the DEPARTMENT believes that the child or family could benefit from additional services, "the local service may suggest such services, including services under Section 8.2, for the family's *voluntary* acceptance or refusal." 325 ILCS 5/8.1. (Emphasis added.)

74. Pursuant to Section 8.2 of the Act, "[i]f the Child Protective Service Unit determines, following an investigation made pursuant to Section 7.4 of this Act, that there is credible evidence that the child is abused or neglected, the Department shall assess the family's need for services, and, as necessary, develop, with the family, an appropriate service plan for the family's *voluntary* acceptance or refusal." 325 ILCS 5/8.2 (Emphasis added.)

75. Additionally, pursuant to the Child and Family Services Act, acceptance of all family preservation services "shall be voluntary." 20 ILCS 505/5(l).

76. A government agency cannot threaten an individual with an action the agency is not legally permitted to take. *See Dupuy v. Samuels*, 465 F. 3d 757 (2006).

## COUNT I: FRAUD

77. Plaintiffs incorporate paragraphs 1-57 as if fully set forth herein as paragraph 58.

78. DEFENDANT WHITE asserted a material, false statement by writing that ARTISHA verbally agreed on the purported safety plan.

79. DEFENDANT WHITE knew this statement was untrue, as ARTISHA stated multiple times that she was not agreeing to a document she was unable to see. DEFENDANT WHITE made this statement with the knowledge or intent that DEFENDANT BRADY or another caseworker would see the statement and believe that the purported safety plan was allegedly agreed to, and retain custody of IYAMI after Tuesday, April 23, 2024, without commencing a temporary custody hearing.

80. Defendant BRADY, who erroneously believed that ARTISHA had agreed to the purported safety plan, relied on Defendant WHITE's statement.

81. Defendant WHITE's statement caused ARTISHA and IYANI significant injury.

82. The DEPARTMENT retained custody of IYANI for three days after the 48-hour period had passed, without commencing a temporary custody hearing.

83. As relief, Plaintiffs seek compensatory damages against all defendants in an amount not less than $100,000, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief, including but not limited to an award of costs, as the Court deems appropriate.

84. As relief, Plaintiffs also seek an award of punitive damages against the DCFS Defendants.

## COUNT II: VIOLATION OF FOURTH AMENDMENT

85. Plaintiffs incorporate paragraphs 1-57 as if fully set forth herein as paragraph 72.

86. The claim set forth in this Count is brought pursuant to 42 U.S.C. § 1983.

87. ARTISHA possesses a protected liberty interest in IYANI's bodily integrity, freedom from arbitrary detention or imposition of State custody under false allegations, and freedom from unreasonable seizure of IYANI's person.

88. IYANI possesses a protected liberty interest in her bodily integrity, freedom from arbitrary detention or imposition of State custody under false allegations, and freedom from unreasonable seizure of her person.

89. The DCFS Defendants violated the rights of Plaintiffs under the Fourth Amendment to the United States Constitution (as applicable to the States under the Fourteenth Amendment to the United States Constitution), by directing or engaging in IYANI's seizure from the care and custody of ARTISHA from Tuesday, April 23, 2024 until Friday, April 26, 2024, after the statutory 48 hour period had passed, without a valid safety plan and without conducting a temporary custody hearing.

90. The actions and conduct of the DCFS Defendants caused injury to Plaintiffs.

91. As relief, Plaintiffs seek compensatory damages against all defendants in an amount not less than $100,000, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief, including but not limited to an award of costs, as the Court deems appropriate.

92. As relief, Plaintiffs also seek an award of punitive damages against the DCFS Defendants.

COUNT III: VIOLATION OF SUBSTANTIVE DUE PROCESS

93. Plaintiffs incorporate paragraphs 1-57 as if fully set forth herein as paragraph 81.

94. The claim set forth in this Count is brought pursuant to 42 U.S.C. § 1983.

95. ARTISHA possesses a protected liberty interest in the care, custody, control, and management of IYANI, the right to raise IYANI, and the freedom of personal choice in matters of family life free from undue outside influence or unwarranted state intrusion.

96. IYANI possesses a protected liberty interest in her care, custody, control, and management by her mother, the right to be raised by her mother, and the freedom of her mother's personal

choice in matters of family life free from undue outside influence or unwarranted state intrusion.

97. These rights are clearly established constitutional rights under the Fourteenth Amendment to the United States Constitution.

98. The DCFS Defendants violated the Plaintiffs' substantive due process rights to familial association, familial autonomy, familial integrity, and family privacy by arbitrarily separating IYANI from her mother and retaining custody of IYANI after April 23, 2024, without a valid safety plan or commencing a temporary protective custody hearing.

99. By holding IYANI away from her mother during the period in which she was detained in State temporary protective custody, the DCFS Defendants violated the family autonomy and family privacy rights of the Plaintiffs.

100. The actions and conduct of the DCFS Defendants caused injury to Plaintiffs.

101. As relief, Plaintiffs seek compensatory damages against all defendants in an amount not less than $100,000, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief, including but not limited to an award of costs, as the Court deems appropriate.

102. As relief, Plaintiffs also seek an award of punitive damages against the DCFS Defendants.

COUNT IV: VIOLATION OF PROCEDURAL DUE PROCESS

103. Plaintiffs incorporate paragraphs 1-57 as if fully set forth herein as paragraph 92.

104. The claim set forth in this Count is brought pursuant to 42 U.S.C. § 1983.

105. ARTISHA possesses a protected due process interest in the opportunity to be heard on the DEPARMTENT's denial of and infringement upon her protected liberty interests.

106. IYANI possesses a protected due process right in the opportunity to be heard on the DEPARTMENT's denial of and infringement upon of her protected liberty interests.

107. These rights are clearly established constitutional rights under the Fourteenth Amendment to the United States Constitution.

108. The DCFS Defendants violated the Plaintiffs' procedural due process rights by retaining custody of IYANI after April 23, 2024, without a valid safety plan and without commencing a temporary custody hearing as required by Illinois law.

109. The DCFS Defendants violated the due process rights of the Plaintiffs.

110. The actions and conduct of the DCFS Defendants caused injury to Plaintiffs.

111. As relief, Plaintiffs seek compensatory damages against all defendants in an amount not less than $100,000, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief, including but not limited to an award of costs, as the Court deems appropriate.

112. As relief, Plaintiffs also seek an award of punitive damages against the DCFS Defendants.

WHEREFORE the Plaintiffs, ARTISHA MCDONALD-NNAMDI UDEAGU and IYANI MCDONALD pray this Honorable Court:

A. Order each Defendant to pay compensatory and consequential damages in excess of $100,000.00, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. Order each Defendant to pay punitive damages on all claims allowed by law against individual Defendants and in an amount to be determine at trial;

C. Award ARTISHA and IYANI their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

D. Grant ARTISHA and IYANI such further relief as this Court deems just and equitable.

                ARTISHA MCDONALD-NNAMDI UDEAGU, IYANI MCDONALD

By: _____
       Timothy D. Brandner

Timothy D. Brandner: ARDC No. 6330828
BRODY BRANDNER, LTD.
Attorney for Plaintiff
11608 Dean Street, Suite 103
Huntley, IL 60142
(815) 479-8800
Email service to: service@brodybrandner.com